UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CHARLES MALMBERG,

        Plaintiff

       vs.                                     Civil Case No. 06-CV-1042 (FJS/GHL)

UNITED STATES OF AMERICA,

        Defendant

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW SUBMITTED BY CHARLES MALMBERG

1.     Charles Malmberg was born October 29, 1959.

2.     The plaintiff's formal education ended with 9th grade.

3.     On February 28, 2002, he injured his left shoulder while working for a local car dealership. As a result of his injury he last worked on July 23, 2002.

4.     His chief complaint from his injury at work was pain and numbness of his left arm causing some restriction of use of his left arm.

5.     Prior to the surgery in question he met with Dr. Krishnamurthy, a neurosurgeon employed at the VAMC in Syracuse. Dr. Krishnamurthy told Mr. Malmberg the operation he was proposing was a simple procedure and Mr. Malmberg would probably stay overnight and be released the next day. The operation would get rid of this pain and improve his ability to use his left arm and he would be able to return to work.

6.     The operative report was dictated by the surgeon, Donald Blaskiewicz, who states

       at the end of the report that Dr. Krishnamurthy was present throughout the surgery. Dr. Blaskiewicz was a resident in training at the time.

7. Neither Dr. Krishnamurthy or Dr. Blaskiewicz were able to recall the details of the surgery.

8. The surgery involved placing a graft at C5-6.

9. Immediately upon awakening it was determined Mr. Malmberg had problems moving his extremities.

10. An MRI was ordered and interpreted by Dr. Cooney who was also employed by the VA. This MRI lists multiple findings consistent with the diagnosis that during the operation the spinal cord was injured.

B. **Damages**

1. Prior to the operation in question in 2004, the plaintiff had full use of his legs and right arm and some restrictive use of his left arm at times.

2. Following the operation, the plaintiff for all practical purposes has lost the use of his legs, has limited use of his hands and arms, has impaired bladder and bowel function. The plaintiff is now on multiple medications and requires the assistance of others to perform basic daily activities.

3. Plaintiff prior to the surgery in question had a family physician, David Hunsinger, M.D., who he saw at a VA clinic.

4. Since the surgery, plaintiff continues under the care of Dr. Hunsinger.

5. The plaintiff is seeking a monetary recovery for his pain, suffering and loss of enjoyment of life. Plaintiff also seeks a monetary award to future medical related

expenses. At the present time because the plaintiff is without funds he has been limited to receiving whatever medical care the VA makes available to him.

C. **Conclusions of Law**

1. Clearly the plaintiff has the burden of establishing both that the defendant deviated from the standard of care and the deviation was a substantial factor in causing injuries to the plaintiff.

### *Standard of Care*

Dr. Krishnamurthy was a board certified neurosurgeon at the time fo the surgery in question. Dr. Krishnamurthy admits he was supervising the actions of Dr. Blaskiewicz during the surgery in question. As a board certified neurosurgeon under the applicable New York law the surgeons here must comply with minimum national standards care. See New York Pattern Jury Instructions 2:150, *Payant v. Imobersteg*, 256 AD2d 702, 681 NYS2d 135.

Malpractice is professional negligence and medical malpractice is the negligence of a doctor. Negligence is the failure to use reasonable care under the circumstance, doing something a reasonably prudent doctor would not do under the circumstances or failing to do something that a reasonably prudent doctor under the circumstances. It is a deviations or departure from accepted practice. (See New York Pattern Jury Instruction 1.150).

### *Vicariously Liable*

2. The law is also clear that a physician can be vicariously liable for another physician's negligence if the former had control of the latter's treatment of the patient. *Ros v.*

    *Mandeville*, 45 AD3d 755, 846 NYS2d 276.

3. It is expected that every physician who testifies in this case will admit that any surgeon is required to do everything reasonably necessary to avoid injury to the patient. That is the standard of care. Defense counsel has cited law regarding the error in judgment. This is not an error in judgment case but instead a violation of the standard of care. Error of judgment only applies when there are two or more acceptable alternatives and the defendant considered and chose among several medically acceptable alternatives. *Nestorowich v. Ricotta*, 97 NY2d 393, 740 NYS2d 840; *See also Martin v. Lattimore Reed Surgicenter*, 281 AD2d 866, 727 NYS2d 836. Plaintiff intends to show that unnecessarily increasing the risk of harm to this patient is not an acceptable alternative.

D. **Defendant is Liable**

1. Prior to the initiation of this lawsuit the Government did an investigation into the circumstances of the operation in question. Upon information and belief, the investigation was conducted by Willard Brown, D.O. who specialized at the time in orthopaedic surgery. Dr. Brown concluded he was unable to rule out that negligence during the surgery was the cause of the plaintiff's quadriplegia. As a result of the Governments investigation the plaintiff was found to be entitled to compensation under 38 USC 1151 for C5-7 incomplete quadriplegia. In the rating decision in giving the reasons for the decision it is states "compensation is payable for any disability which results from VA hospitalization, medical, or surgical treatment, if the disability is a result of carelessness, negligence, lack of proper skill, error in

   judgment, or similar instance of fault on the part of the Department of Veterans Affairs. Entitlement to compensation for C5-7 incomplete quadriplegia is established because this disability resulted from VA surgical treatment. The evidence shows that on November 4, 2004, you underwent cervical spine surgery at VAMC Syracuse to treat cervical spondylosis, herniated intervertebral C5-6 disc, and cervical radiculopathy. The procedure was spinal disc surgery with spinal fusion and bone grafting. Postoperatively, you awoke with immediate lower extremity weakness. A postoperative MRI showed probable post surgical material bulging outwardly into the canal causing mild impingement of the thecal sac, disc protrusion causing mild cord impingement at C4-5, and a small extruded disc fragment causing mild cord impingement at C6-7. The interpreting radiologist stated that this could be due to an acute injury of the cord such as ischemia or contusion, or due to residual edema from prior compression, and needed further clinical correlation. The evidence shows that your surgery was the proximate cause of your incomplete quadriplegia, and surgical error can not be ruled out without resorting to speculation. Therefore, all reasonable doubt is resolved in your favor and compensation is granted."

2. Ironically, the defendant's retained expert Dr. Dunn admitted that he could not rule out the cause for Mr. Malmberg's injury was as a result of the surgeon's negligence.

3. The plaintiff's expert is expected to testify that the surgeon or surgeons did in effect deviate from accepted practice during the surgery and the deviations resulted in the plaintiff now being diagnosed as an incomplete quadriplegic.

E.  **Causation**

The Court can take judicial notice of the above referenced Ratings Decision as an admission of both negligence and causation.  As to the law in New York on causation, one of the leading cases is *Monahan v. St. Joseph Hospital and Health Care Center,* 82 AD2d 102, 442 NYS2d 295.  In *Monahan*, the Appellate Court ruled "to establish a prima fascie case of medical malpractice the plaintiff need not eliminate entirely all possibilities that defendant's conduct was not a cause but only offer sufficient evidence from which reasonable men may conclude that it is more probable that the injury was caused by the defendant than that it was not.  It would appear that the defendant is not really contesting causation but rather that the injury did not result from the defendant's negligence.

F.  **Circumstantial Evidence**

When attempting to establish a prima facie case based on circumstantial evidence, it is enough that the plaintiff shows facts and conditions from which negligence of the defendant(s) and the causation of the accident by that negligence may be reasonably inferred. Plaintiff is not required to eliminate all other possible causes of the injury in order to establish a prima facie case. *Turcsik v. Guthrie Clinic, LTD*, 12 AD3d 883, 784 NYS2d 721.

In the *Turcsik* case the plaintiff's expert testified the damage was caused either by a sharp instrument such as a scalpel or scissors, cutting the nerve or by blunt tipped forceps squeezing the nerve.  The expert further testified that the cutting or tension compression of the nerve was a deviation from the standard of care and the damage caused was not at all an expected outcome from this procedure.

The Court ruled the "plaintiff was not required to prove the precise motion of the

defendant's negligence given the insufficiency of the surgical records and notations related to plaintiff's surgery including the absence of a list of the instruments used during the surgery.

Part of the claim in this case was the defendant was negligent in failing to use an operative microscope for visualization. This claim is based in part upon the absence in the operative report of any mention that the surgeon used a microscope. The Court also ruled in *Turcsik,* the lack of specificity as to how and when the injury occurred does not undermine the plaintiff's prima facie case because under the circumstance herein, it is enough that the expert offered sufficient evidence from which reasonable people might conclude that it is more probable than not that the injury was caused by the defendant.

It is expected the plaintiff's expert will discuss how inadequate distraction contributed to inadequate visualization resulting in the plaintiff's spinal cord being damaged.

As the Court will hear from the physicians who operated on the plaintiff as well as the defense expert, they are unable to explain why the plaintiff is now a quadriplegic. The record is clear that something occurred during the operation to cause this problem. In *Villa v. City of New York*, 148 AD2d 699, 539 NYS2d 446, the expert for the plaintiff admitted he had difficulty in determining what had occurred during the operation but concluded that something drastic had occurred since the patient entered the operation with a functional hand and emerged with a functionless hand. The Court ruled there was ample circumstantial evidence that an improper procedure was performed.

It is expected that the plaintiff's expert will testify that had the surgeons performed

the operation in such a way as to provide proper visualization of the operative site, the risk of damage to the spinal cord would have been significantly reduced or prevented. In *Coluzzi v. Korn*, 209 AD2d 951, 624 NYS2d 688, the Court emphasized the plaintiff was not required to provide the precise nature of the defendant's negligence. The plaintiff's expert testified that standard precautionary methods of protecting the peroneal nerve would have prevented the nature and extent of the damage to plaintiff's nerve.

The Court of Claims Judge in *Welsh v. State of New York*, 51 AD2d 602, 377 NYS2d 790, found the defendant surgeon was negligent. In this case he plaintiff had a surgical procedure known as arthrotomy and meniscectomy. After the procedure it was discovered during the operation that peroneal nerve had been transected or cut resulting in a drop foot. The Court found the defendant was negligent in failing to employ the technique of retraction of the nerve so as to avoid injury. The plaintiff's expert testified that good medical practice would be to retract the nerve so as to remove it from the operative field thereby reduce the risk of injury. The defendant expert testified that retraction is not necessarily a proper procedure in a case of this sort.

It is expected that this Court in part will have to decide if the available distractors should have been used and had they been used would the injury in this case have been prevented or the risk of this injury have been significantly reduced.

G.  **Conclusion**

The plaintiff has established by preponderance of the evidence that the surgeons in

performing the operation of November 4, 2004 deviated from accepted practice and that such deviation resulted in significant permanent injuries to the plaintiff.

Dated: March 23, 2010

                                       s/Robert B. Nichols
                                       Robert B. Nichols, Esq.
                                       Attorney for the Plaintiff
                                       Paul William Beltz, PC
                                       36 Church Street
                                       Buffalo, New York 14202

cc:    William Larkin, Esq.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

**********************************
CHARLES MALMBERG,

       Plaintiff

   vs.                             Civil Case No. 06-CV-1042 (FJS/GHL)

UNITED STATES OF AMERICA,

       Defendant
**********************************

## CERTIFICATE OF SERVICE

     I hereby certify that on March 23, 2010, I electronically filed the foregoing **PLAINTIFF'S PROPOSED FINDING OF FACTS** with the clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

     William F. Larkin, Esq.
     william.larkin@usdoj.gov

                                    /s/ Nadine A. Mathis
                                    Nadine A. Mathis
                                    Legal Assistant