**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

---

CHARLES MALMBERG
Plaintiff

v.

UNITED STATES OF AMERICA
Defendant

---

**NOTICE OF MOTION**
Civil Action No.
5:06-CV-1042
(FJS/TWD)

**PLEASE TAKE NOTICE** that the plaintiff, **CHARLES MALMBERG,** by his attorney, Robert B. Nichols, will move before Honorable Frederick J. Scullin, Jr., United States District Court Judge on August 10, 2012 at 10:00 a.m., for an Order granting leave to raise the ad damnum clause from $6,000,000 to $15,000,000 as more fully set forth in the annexed affidavit of Robert B. Nichols, submitted in support of the plaintiff's motion.

**PLEASE TAKE FURTHER NOTICE** that the plaintiff intends to file and serve reply papers. Therefore, pursuant to Local Rule 7.1( c), any papers in opposition to this motion must be filed and served at least eight (8) business days prior to the return date of this motion, or as otherwise ordered by the Court.

DATED: Buffalo, New York
June 28, 2012

By: s/Robert B. Nichols
Robert B. Nichols, Esq.
Attorney for Plaintiff
716 Brisbane Building
403 Main Street
Buffalo, New York 14203

TO: William F. Larkin, Esq.
Assistant U.S. Attorney
Attorney for Defendant
100 South Clinton Street
Room 900
P.O. Box 7198
Syracuse NY 13261-7198

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

---

CHARLES MALMBERG
Plaintiff

v. Civil Case No. 06-CV-1042 (FJS/TWD)

UNITED STATES OF AMERICA
Defendant

---

**AFFIDAVIT**

STATE OF NEW YORK)
COUNTY OF ERIE ) ss.:
CITY OF BUFFALO )

**ROBERT B. NICHOLS,** being duly sworn, deposes and says:

1. I am the attorney for the plaintiff, Charles Malmberg, in the above-entitled action.

2. The purpose of this motion is to amend the complaint that was filed on August 28, 2006 to increase the ad damnum clause from $6,000,000 to $15,000,000 based upon newly discovered evidence and intervening facts.

3. It was certainly recognized at the outset that the plaintiff suffered from some level of paralysis. An administrative claim was filed to obtain compensation for the plaintiff's pain and suffering and loss of enjoyment of life and future medical-related costs. Thereafter, after waiting the requisite six months, a lawsuit was commenced against the defendant by filing a Complaint on August 28, 2006 in which the ad damnum clause sought $6,000,000 (Exhibit "A").

4. It is now apparent with the passage of time that the plaintiff's damages are significantly greater than originally appreciated. When the lawsuit was first commenced, there was some hope that the plaintiff would some day regain his ability to walk. In addition, when the lawsuit was commenced, it was assumed that the plaintiff's overall medical problems would improve or, at

worse, stabilize and his need for future care would stay the same or improve. However, with the passage of time it is now readily apparent the assumptions made were not accurate since Mr. Malmberg's condition has deteriorated and his future medical-related needs have significantly increased. As a result, the plaintiff's pain and suffering and loss of enjoyment of life have also been significantly impacted.

5. In support of our claim of newly discovered evidence, attached to this motion are selected portions of Mr. Malmberg's medical records as well as selected portions of testimony from Mr. Malmberg's primary care physician, Dr. Hunsinger. For the Court's information, since Mr. Malmberg's surgery November 4, 2004 and as a direct result of complications from the surgery, Mr. Malmberg has, with the exception of 2011, returned for annual evaluations at the VAMC in Syracuse. Exhibit "B" is the discharge summary from the 2010 evaluation. The summary is signed by Dr. Stephen Lebduska on June 2, 2010. Under the history and physical, he reports that when Mr. Malmberg was discharged on February 17, 2005 from the VAMC in Syracuse. Mr. Malmberg was "independent with all of his activities in daily living. He was independent with gait with a rolling walker 200 feet in a KAFO (brace). He was able to go up and down steps with bilateral handrails and was voiding on his own and had spontaneous continent control of stool." Unfortunately, after the lawsuit was filed in 2006, Mr. Malmberg's condition has deteriorated. In the same history as reflected in Exhibit "B", it goes on to state, "For the past three years, he has been having increased pain, increased spasticity and increased weakness in the arms and legs."

6. Dr. Hunsinger in a note October 7, 2010 documents Mr. Malmberg's dissatisfaction with his care at the VA Spinal Cord Unit in Syracuse and believes his physical capabilities have deteriorated significantly (Exhibit "C").

7. Also attached is a note of December 21, 2010 in which Mr. Malmberg notes his desire to become an inpatient at the Spinal Cord Center in Houston and about his "desperation in his efforts to become more mobile and therefore more independent" (Exhibit "C") and the orthopedic note January 10, 2011 in which in records that Mr. Malmberg is mainly interested in a general rehab program to allow him to get ambulatory again" (Exhibit "D") as well as the note of January 7, 2011 referring to the Bronx VA and Mr. Malmberg's goal to be walking by the summer (Exhibit "E"). In particular, Mr. Malmberg was sent to the Bronx VA Hospital in 2011 with the goal of providing rehabilitation so that Mr. Malmberg could regain some ability to stand and walk. Unfortunately for the first time, Mr. Malmberg was told his condition would never allow him to put any weight on his legs and this would cause Mr. Malmberg to be confined to a wheelchair for the rest of his life (Exhibit "F"). This determination has caused a significant increase in Mr. Malmberg's depression and deterioration in his mental status, all requiring additional care by a psychiatrist. Also attached is a note from Dr. Hunsinger dated March 31, 2011 again referring to Mr. Malmberg's perceived mistreatment by the VA and referring to his long-standing wound on his ankle and the potential for losing the foot (Exhibit "G") , the note of the Psychologist Oswald dated April 1, 2011 discussing his disrupted sleep, nightmares, increasing social anxiety with fears about how people view him, loss of appetite, panic attacks whenever he leaves his home, inability to concentrate, loss of memory, near continuous panic or depression affecting the ability to function independently, unable to leave the house without fear of fecal incontinence (Exhibit "H"). The VA note reflecting in 2011 of having increasing difficult time using his manual wheelchair, increased pain, decreased range of motion, increased dependence on aides for his shopping (Exhibit "I").

8. All the above notes that reflect upon the deterioration of Mr. Malmberg's physical and

mental status are supported in the recent testimony provided by Dr. Hunsinger on March 23, 2012. Pertinent pages of Dr. Hunsinger's deposition are attached as Exhibit "J". Dr. Hunsinger confirmed the deterioration of Mr. Malmberg's condition as reflected by Dr. Lebduska was something Dr. Hunsinger has witnessed himself. As a result of his increased lack of movement, the plaintiff is at significant risk for further decubitus ulcers . Dr. Hunsinger confirmed that in 2011 the specialist at the VA Hospital in the Bronx determined Mr. Malmberg was not a candidate for ambulation. He has confirmed that Mr. Malmberg's physical capabilities have deteriorated. That Mr. Malmberg has continued to become more dependent on others.

9. Dr. Hunsinger in his recent testimony commented upon the VA staffing or lack thereof, stating "there's only so many nurses who are employed to make these home visits. There are a growing number of patients who need and would benefit from them. So there are just not enough hours and bodies to do so more frequently". Unfortunately, the plaintiff has an increased dependence on the home health aides. Mr. Malmberg is unable to shower without an aide and not able to shave without an aide. At the present time the VA has approved aides only three times per week. The VA medical records clearly reflect "he has increased dependence of his home health aide because of accessability issues", and "he has been wearing diapers more often now due to frequent bowel incontinence."

10. The most significant newly discovered evidence was the life care plan prepared by Dr. Reagles and supported by Dr. Hunsinger and revised on March 20, 2012 with the assistance of Dr. Hunsinger after Dr. Hunsinger and Dr. Reagles got together on March 9, 2012 to discuss Mr. Malmberg's future health care related needs (Exhibit "K"). Significantly the life care plan sets forth the projected future medical and injury-related needs of Mr. Malmberg. Unfortunately for Mr.

Malmberg, the life care plan establishes that as time passes, Mr. Malmberg's condition will continue to deteriorate to the point he will eventually need around-the-clock care. (See deposition Exhibits 3,4,5) attached hereto as Exhibit "L". This plan included the prediction by Dr. Hunsinger that when Mr. Malmberg reaches 62 because of deteriorating conditions, he will need around-the-clock medical care, either in his own home or some residential facility. Dr. Hunsinger acknowledged this need could be earlier, but he felt 62 was a reasonable estimate. As the Court can appreciate, the costs of providing such care is significant. Exactly how significant was only recently discovered when the economist Daniel McGowan testified on April 23, 2012 and projected the costs of providing all the items and medical care projected in the life care plan. The cost of the additional care could only be determined with the assistance of an economist. The Court will recall plaintiff was permitted to retain an economist after the Court's decision on liability. Plaintiff's counsel retained Professor Daniel McGowan who has a Ph.D. in Economics and is a retired professor having taught at Hobart College for 30 years. Professor McGowan was deposed by defense counsel on April 23, 2012, and during the course of the deposition, it was first discovered that Dr. McGowan had initially made a significant error in determining the "value of the cost of the life care plan" by Dr. Reagles. Professor McGowan, in letters dated April 25, 2010 and May 25, 2012 gave his explanation for this error (Exhibit "M"). As the Court can see, Professor McGowan originally projected the cost to be $4,432,270, which should have been $9,557,617. Obviously it was based upon the recent developments that counsel for the plaintiff appreciated it would be appropriate to make this motion. It is respectfully submitted that this development could not have been predicted by me as counsel when the claim was first filed because it was not predicted by Mr. Malmberg's treating physicians at that time.

11. Certainly everyone will agree the initial claim made of $6,000,000 showed or appreciated that this was a very significant claim, but it is respectfully submitted it would be unfair to Mr. Malmberg to limit his claim to the initial claim in light of the newly discovered evidence and intervening facts that have only become readily apparent with the passage of time and the recent projection by the experts in their testimony.

12. Therefore, based upon the VA medical records, as time has progressed, including the Bronx VA records, together with recent testimony of Dr. Hunsinger, Dr. Reagles and Dr. McGowan, and Mr. Malmberg's increased pain and suffering and loss of enjoyment of life, it has become readily apparent that the original ad damnum clause is not sufficient, and the plaintiff requests permission to increase the ad damnum clause to $15,000,000.

**WHEREFORE,** I would respectfully request the Court to grant the relief requested.

s/Robert B. Nichols
Robert B. Nichols

Sworn to before me this
29th day of June, 2012

s/Doreen J. Kurasiewicz
Notary Public, State of New York
Qualified in Erie County
My Commission expires 7/11/14

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

---

CHARLES MALMBERG
Plaintiff

v.

UNITED STATES OF AMERICA
Defendant

---

**Certificate of Service**
Civil Action No.
5:06-CV-1042
(FJS/GHL)

I hereby certify that on June 29, 2012, the foregoing motion dated June 29, 2012 with attachments was electronically filed with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:

William F. Larkin william.larkin@usdoj.gov

By: s/Doreen J. Kurasiewicz
Doreen J. Kurasiewicz
Legal Assistant