**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

**CHARLES MALMBERG,**

                 **Plaintiff,**

         **v.**                              **5:06-CV-1042
                                                    (FJS/TWD)**

**UNITED STATES OF AMERICA,**

                 **Defendant.**

---

**APPEARANCES**                                 **OF COUNSEL**

**OFFICE OF ROBERT B. NICHOLS**      **ROBERT B. NICHOLS, ESQ.**
716 Brisbane Building
403 Main Street
Buffalo, New York 14203
Attorneys for Plaintiff

**OFFICE OF THE UNITED**               **WILLIAM F. LARKIN, AUSA**
**STATES ATTORNEY**
James Hanley U.S. Courthouse
& Federal Building
100 South Clinton Street
Syracuse, New York 13261-7198
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

      In his administrative claim Form 95, dated January 17, 2006, Plaintiff alleged that, as a result of negligent medical care and treatment, he suffered "paralysis involving all extremities"; and, as a result, he requested damages of $6,000,000. *See* Dkt. No. 116 at 2 (citing Exh. A). Subsequently, in his complaint dated August 11, 2006, Plaintiff alleged serious and permanent

injuries and requested $6,000,000 in damages. *See id.* (citing Exh. B).

The Court held a bench trial from April 12, 2010, through April 14, 2010, and again on April 26, 2010. On May 3, 2011, the Court issued a Memorandum-Decision and Order in which it found that a deviation from the accepted standards of medical care during his surgery on November 4, 2004 had caused Plaintiff's post-operative incomplete quadriplegia. *See* Dkt. No. 85.

Currently before the Court is Plaintiff's motion for leave to amend the *ad damnum* clause of his complaint from $6,000,000 to $25,000,000. *See* Dkt. Nos. 110, 113.[1] Defendant opposes this motion. *See* Dkt. No. 116.

## II. DISCUSSION

Since the Federal Tort Claims Act ("FTCA") is a statute that waives sovereign immunity, the parties must strictly comply with its requirements. *See O'Rourke v. E. Air Lines, Inc.*, 730 F.2d 842, 856 (2d Cir. 1984), *abrogated on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991) (citation omitted). Therefore, when a plaintiff seeks to amend his *ad damnum* clause to increase the amount he sought in his administrative complaint, a court may not substitute the liberal pleading requirements of Rule 15 of the Federal Rules of Civil Procedure for the narrower requirements of § 2675(b). *See id.*

For purposes of resolving this motion, the relevant provision of the FTCA is 28 U.S.C. § 2675(b), which provides that

---

[1] In his original motion for leave to amend the *ad damnum* clause, Plaintiff moved to increase the amount from $6,000,000 to $15,000,000. *See* Dkt. No. 110. Approximately one week later, he moved to increase the amount to $25,000.000. *See* Dkt. No. 113.

> (b) Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based on newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

28 U.S.C. § 2675(b).

It is well-established that "'[t]he burden of establishing . . . "newly discovered evidence" or "intervening facts" . . . rests on the claimant plaintiff.'" *Lowry v. United States*, 958 F. Supp. 704, 710 (D. Mass. 1997) (quotation and other citations omitted). In canvassing the case law to determine the meaning of "newly discovered evidence" and "intervening facts," the *Lowry* court noted that the general theme was foreseeability. *See id.* at 711. Thus, if the condition was reasonably foreseeable at the time the plaintiff filed his administrative claim, the court will not allow him to increase the *ad damnum* clause. *See id.* Furthermore, courts will only allow an increase in the *ad damnum* clause if the plaintiff was reasonably diligent in attempting to discover those facts that were discoverable before filing his administrative claim. *See id.*

In *O'Rourke*, the Second Circuit addressed the issue of when a court should allow amendment of an *ad damnum* clause in a suit against the United States brought under the FTCA. In reviewing the decisions of other courts, the court noted that those courts had granted such motions "only when an unexpected change occurred either in the law or in a medical diagnosis." *O'Rourke*, 730 F.2d at 856. The court further noted that, "[i]n all of these cases, there was some indication that the amount of the original claim was calculated on the basis of known facts at the time of the filing and that, subsequently, some new and previously unforeseen information came to light." *Id.* In finding that in the case before it the district court should not have granted the

motion to amend the *ad damnum* clause, the Second Circuit stated that

> [t]he FTCA, as a statute waiving sovereign immunity, must be complied with strictly. . . . If plaintiff were allowed to amend his *ad damnum* clause based upon the minimal showing he made in the district court, we would, in effect, be substituting the liberal pleading requirements of Federal Rule of Civil Procedure 15 for the narrower requirements of § 2675(b). This we may not do.

*Id.* (internal citation omitted).[2]

In the present case, although Plaintiff bases his motion on newly discovered evidence, he has pointed to nothing in the record that supports this contention. Rather, he merely cites general propositions that are bereft of any factual underpinnings. For example, in his affidavit, Plaintiff's counsel states that "[i]t is now apparent with the passage of time that the plaintiff's damages are significantly greater than originally **appreciated**." *See* Affidavit of Robert B. Nichols sworn to June 29, 2012, at ¶ 4 (emphasis). Furthermore, Plaintiff's counsel states that, "[w]hen the lawsuit was first commenced, there was **some hope** that the plaintiff would some day regain his ability to walk . . . [and] it was **assumed** that the plaintiff's overall medical problems would improve or, at worse stabilize and his need for future care would stay the same or improve." *See id.* (emphasis added). Finally, Plaintiff's counsel asserts that, "with the passage of time it is now readily apparent the assumptions were not accurate since [Plaintiff's] condition has deteriorated and his future medical-related needs have significantly increased. As a result, the plaintiff's pain and suffering and loss of enjoyment of life have also been significantly impacted." *See id.*

---

[2] Plaintiff cites *Lane v. United States*, No. 95CIV.9690, 1996 WL 426312 (S.D.N.Y. July 30, 1996), for the proposition that "the limitation that § 2675(b) places on recovery does not alter the lenient standard for amending a complaint." *See* Dkt. No. 110-10 at 1 (citing [*Lane*] at 2 (citing *Colin v. United States*, 324 Supp. 121 [sic] (W.D. Mo. 1970)). Whether *Lane* in fact stands for this proposition is irrelevant because, as the Second Circuit's decision in *O'Rourke* makes clear, this is not the law in the Second Circuit.

Although it is clear that Plaintiff's condition has deteriorated, and arguably has deteriorated significantly, since the time he filed his administrative claim in January 2006, Plaintiff has failed to point to any evidence in the record to demonstrate that this deterioration is anything more than the worse case scenario for the injuries he suffered as a result of Defendant's negligence. Moreover, he has failed to demonstrate that this worse case scenario was not reasonably foreseeable at the time that he filed his administrative claim. In fact, in his administrative claim, he stated that "the care [he received] prior, during and after surgery was rendered negligently . . . [and that] [a]s a result of this negligent treatment [he was] left with **paralysis involving all extremities**." *See* Dkt. No. 115-1, Plaintiff's Administrative Complaint (emphasis added).

In addition, most of the cases that Plaintiff cites do not involve the FTCA. *See, e.g., Mahar v. US Xpress Enters., Inc.*, 688 F. Supp. 2d 95 (N.D.N.Y. 2010); *Violette v. Armonk Assocs., L.P.*, 849 F. Supp. 923 (S.D.N.Y. 1994); *Greeenspon v. Supermarkets Gen. Corp.*, 744 F. Supp. 77, 78 (S.D.N.Y. 1990); *Varveris v. U.S. Lines Co.*, 141 F. Supp. 874, 875 (S.D.N.Y. 1956). Such cases are not relevant because the standard for amending an *ad damnum* clause in cases that do not involve the FTCA is different than the standard for amending an *ad damnum* clause when the FTCA is involved. As the courts that have addressed this distinction have made clear, this difference is due to the fact that, because the FTCA is a limited waiver of the United States' sovereign immunity, the parties must strictly comply with the statutory requirements. *See O'Rourke*, 730 F.2d at 856.

Finally, the cases that Plaintiff cites that involve the FTCA are factually distinguishable. In *Foskey v. United States*, 490 F. Supp. 1047 (D.R.I. 1979), the court concluded that "[t]he stark

reality of [the plaintiff's] irreversible physical and mental destruction wasn't cast until" five years after the date of her injury. *Id.* at 1060. Furthermore, the court noted that, from 1972 until 1977, "the many doctors who were consulted all voiced the optimistic opinion that [the plaintiff] would make developmental progress under proper treatment." *Id.* The plaintiff did make the progress that the doctors had expected; however, as the court noted, "[u]nfortunately what was not reasonably discoverable or foreseeable was that the effort [the plaintiff] expended in this learning process and the excitement it generated precipitated a whole series of new seizures; the entire process became counterproductive; it had to be abandoned." *Id.* at 1061. Based on these facts, the court concluded that "at the time the administrative claim was filed it was not known to the parents or to the doctors that [the plaintiff] would never improve; never acquire a degree of self sufficiency. Only [the plaintiff's] reaction to the intervening medical and therapeutic efforts definitively established the zero prognosis of her case." *Id.*

Likewise, *Garcia v. United States*, 697 F. Supp. 1570 (D. Colo. 1988), is clearly distinguishable. In *Garcia*, at the time the administrative claim was filed, the plaintiff was in a coma and, according to the medical reports given to his wife, was not expected to recover. *See id.* at 1575. The plaintiff, however, survived but was a quadriplegic and was bedridden. *See id.* Based on these facts, the court found that, at the time that the administrative complaint was filed, the plaintiff would not have benefitted from home care, a wheel-chair accessible van or a barrier free home nor would he have had the level of pain and suffering that he would experience during the rest of his life. *See id.* Therefore, the court concluded that the plaintiff could seek damages in excess of the amount in the administrative claim because his survival constituted "newly discovered evidence not reasonably discoverable" at the time of the filing of the administrative

claim. *See id.* at 1576.

Finally, *Michels v. United States*, 31 F.3d 686 (8th Cir. 1994), is factually and procedurally distinguishable. The plaintiff in *Michels* filed an administrative claim seeking $450,000 in damages. The plaintiff moved to increase his claim under § 2675; the government objected; and the court deferred ruling on the motion. After a bench trial, the district court awarded the plaintiff $710,000 in damages, concluding that § 2675(b) permitted him to recover damages in excess of his administrative claim because he had presented newly discovered evidence not reasonably discoverable or intervening facts. The government appealed on the ground that the district court had committed errors of law in interpreting and applying § 2675(b). The Eighth Circuit disagreed and affirmed the district court's decision.

In addressing the government's arguments that the district court had misconstrued § 2675, the court noted that it agreed with courts that had interpreted the phrase "not reasonably discoverable" to mean that when existing medical evidence and advice put the claimant "'on fair notice to guard against the worst-case scenario'" in preparing the administrative claim, a § 2675(b) motion to increase that claim in litigation should be denied. *See id.* at 688 (quoting *Reilly v. United States*, 863 F.2d 149, 172 (1st Cir. 1988)). However, the court also noted that it "agree[d] with the many decisions acknowledging that a known injury can worsen in ways not reasonably discoverable by the claimant and his or her treating physician, and holding that such 'newly discovered evidence' or 'intervening facts,' if convincingly proved, can warrant § 2675(b) relief." *Id.* (citations omitted).

The court also agreed that § 2675(b) contains an objective standard – "'newly discovered evidence not *reasonably* discoverable[,]'" *id.* at 689, and did not endorse the district court's use of

-7-

the phrase "'reasonably based change in expectation[,]'" *id.* Nonetheless, the court disagreed with the government that the court had applied an impermissible subjective standard because the district court had clearly stated an objective standard: "'[A] claim may be increased when the claimant either did not know or reasonably could not have known the severity of the injury at the time the FTCA tort claim notice was filed.'" *Id.* (quoting 815 F. Supp. at 1261). Having found that the district court had applied the correct legal standard, the court affirmed the district court's judgment.[3]

Unlike the situation in *Michels*, the facts of this case more closely parallel the facts in *Reilly v. United States*, 863 F.2d 149 (1st Cir. 1988). In that case, the plaintiffs submitted their administrative claim, in which they sought $10,000,000 in damages, five months after their daughter's birth. In their claim, they described their daughter's injuries as follows: "'Hypoxic ischemic encephalopathy resulting in seizures, blindness, profound neurological deficit; loss of consortium, emotional distress. Peter Reilly and Donna Reilly sue individually on their own behalf as well as on behalf of their minor child.'" *Id.* at 171 (quoting Form 95). At trial, the plaintiffs sought to recover more than the upper limit of their claim, and the district court honored their entreaty setting damages in the aggregate amount of $11,037,964. *See id.* In reaching this determination, the district court stated:

> "Only after May 1985 did it become medically apparent that
> Heather would never be able to walk or talk, and that she would be
> able to see only enough to distinguish light from dark. . . . Given
> the undisputed medical impossibility of knowing the extent of
> Heather's multiple disabilities at the time the administrative claim

---

[3] The court noted that the government had not argued that the district court's factual findings of newly discovered evidence and intervening facts were clearly erroneous. *See Michels*, 31 F.3d at 689.

-8-

> was filed, I find the experts' subsequent confirmation that the worst possibilities had materialized to constitute 'newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency . . . ' 28 U.S.C. subsection 2675(b)."

*Id.* (quoting *Reilly I*, 665 F. Supp. at 1011) (footnote omitted).

Noting that the determination of what constitutes "newly discovered evidence not reasonably discovered" is a fact-specific conclusion that demands a substantial degree of deference to the trial court, the First Circuit nonetheless concluded that the district court's determination was plainly erroneous. *See id.* The court explained that,

> [b]ecause the statute itself renders the state of a claimant's knowledge (actual or constructive) at the time of the presentment of the claim of decretory significance, the mechanics of a § 2675(b) inquiry must be double-barrelled: [sic] What should the party have known? When should she have known it? To be binding in this context, knowledge need not be certain.

*Id.*

Likewise, the court noted that "intelligence which serves only to bear out earlier suspicions cannot unlock the FTCA's narrow escape hatch. Diagnoses which are no more than cumulative and confirmatory of earlier diagnoses are neither 'newly discovered evidence' nor 'intervening facts' for the purposes of § 2675(b)." *Id.* (citations omitted). The court thus agreed with the Second Circuit's conclusion in *O'Rourke* that § 2675(b) required a showing that "'some new and previously unforeseen information came to light' between the time of filing the administrative claim and the trial on damages." *Id.* (quoting *O'Rourke v. Eastern Air Lines, Inc.*, 730 F.2d 842, 856 (2d Cir. 1984)). Furthermore, this new information must be material. *See id.*

Based on the facts before it, the court concluded that "the information in question was neither sufficiently new, nor sufficiently unforeseen, nor sufficiently material." *Id.* at 172.

Rather, the court found that, by the time the plaintiffs had filed their claim, they were on notice of the global extent of their daughter's injuries and disabilities. *See id.* Furthermore, the court concluded that "[t]he evidence upon which the district court relied to lift the cap was, at bottom, nothing more than 'the experts' subsequent confirmation that the worst possibilities had materialized.'" *Id.* (quoting *Reilly I*, 665 F. Supp. at 1011). The court noted that these "worst possibilities" were present at the time the plaintiffs filed their claim and "[t]he mere fact that these dread consequences, feared from the beginning, had become more certain does not suffice to brand them 'newly discovered.'" *Id.*

Like the plaintiffs in *Reilly*, Plaintiff was on notice at the time he filed his administrative claim of the global extent of his injuries, i.e., paralysis in all four extremities, as well as the worse possibilities attendant to such a diagnosis. Although he may have **hoped** for some recovery from that paralysis, the fact that this "hope" did not materialize and that the dreaded consequences of his injuries became more certain over time is not sufficient to constitute newly discovered evidence. Furthermore, neither Dr. Reagles' life care plan nor Plaintiff's discovery that Dr. McGowan, his economist, had erred in determining the value of the cost of the life care plan changes the fact that the injuries themselves and the worse case scenario attendant to such injuries were known or reasonably discoverable at the time that Plaintiff filed his administrative complaint. Therefore, under these circumstances, the Court cannot allow Plaintiff to amend his *ad damnum* clause at this late date with no evidence in the record to support Plaintiff's contention that this new information on which he relies is either material or newly discovered evidence that he could not have reasonably discovered prior to filing his administrative complaint. To do so would be to "substitut[e] the liberal pleading requirements of Federal Rule of Civil Procedure 15

for the narrower requirements of § 2675(b)," which the Second Circuit has instructed that courts in this Circuit cannot do. *O'Rourke*, 703 F.2d at 856.

### III. CONCLUSION

After thoroughly reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion to amend the *ad damnum* clause, *see* Dkt. Nos. 110, 113, is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 12, 2012
      Syracuse, New York

                              Frederick J. Scullin, Jr.
                              Senior United States District Court Judge