14-3555-cv(L)
*Malmberg v. United States*



| | |
|---|---|
| 1 | UNITED STATES COURT OF APPEALS |
| 2 | FOR THE SECOND CIRCUIT |
| 3 | ———————— |
| 4 | |
| 5 | August Term, 2015 |
| 6 | |
| 7 | (Argued: September 25, 2015 · · · · · · · · Decided: March 4, 2016) |
| 8 | |
| 9 | Docket Nos. 14-3555-cv(L), 14-3913-cv(XAP) |
| 10 | |
| 11 | ———————— |
| 12 | |
| 13 | CHARLES MALMBERG, |
| 14 | |
| 15 | *Plaintiff-Appellant-Cross-Appellee,* |
| 16 | |
| 17 | v. |
| 18 | |
| 19 | UNITED STATES OF AMERICA, |
| 20 | |
| 21 | *Defendant-Appellee-Cross-Appellant.* |
| 22 | |
| 23 | ———————— |
| 24 | |
| 25 | Before: CABRANES, POOLER, *Circuit Judges*, and GARDEPHE, *District Judge*[1]. |
| 26 | |
| 27 | Charles Malmberg sued the United States under the Federal Tort Claims |
| 28 | Act after surgery at the Syracuse Veteran's Administration Medical Center |

---

[1] The Honorable Paul G. Gardephe, United States District Court for the Southern District of New York, sitting by designation.

CERTIFIED COPY ISSUED ON 03/04/2016

("VA") rendered him quadriplegic.   After the liability portion of a bifurcated bench trial, the district court found the VA liable for Malmberg's injuries. *Malmberg v. United States*, 814 F. Supp. 2d 159, 167 (N.D.N.Y. 2011).   The government does not appeal the district court's finding of liability.

Malmberg appeals from the August 21, 2014 judgment of the United States District Court for the Northern District of New York (Scullin, *J*.) awarding him damages of $4,468,859.91.  *Malmberg v. United States*, No. 5:06-cv-1042 (FJS/TWD), 2014 WL 4184737, at *15-16 (N.D.N.Y. Aug. 21, 2014).   Malmberg argues that the district court abused its discretion by (1) offsetting the award for future medical care and benefits by subtracting out for services that could be provided by the VA for free, thus forcing him to receive medical services from his tortfeasor rather than choosing his own medical providers in the future; (2) denying his motion to amend his ad damnum clause to increase the amount of damages he sought; and (3) awarding $2 million in damages for past and future pain and suffering, which he contends is lower than comparable awards from New York state courts for similar injuries.   The United States cross-appeals from the district court's refusal to further offset the award for future medical care to reflect future home health services provided by a third-party contractor paid for by the VA.

1    We vacate the district court's decision insofar as it offset the award for

2    future medical care and supplies.  Federal law does not require that a veteran

3    injured as a result of the VA's malpractice be forced to continue under VA care

4    for lack of financial resources and be subject to a concomitant offset, and New

5    York state law does not warrant such an offset.  In addition, we hold that the

6    district court failed to provide adequate analysis to support both its denial of

7    Malmberg's motion to increase the ad damnum and its decision to set the award

8    for past and future pain and suffering at $2 million, and we remand with

9    directions that the district court consider anew Malmberg's motion to increase

10   the ad damnum, taking into account the testimony of Dr. David Hunsinger, and

11   determine damages without an offset for future receipt of medical care and

12   supplies from the VA, consistent with this opinion.  Finally, we affirm the district

13   court's decision not to further offset the award for future home health services on

14   the ground that the provision of such services going forward is not reasonably

15   certain.

16   VACATED and REMANDED in part; AFFIRMED in part.

17   _____

3

ALAN J. PIERCE, Hancock Estabrook, LLP (Robert B. Nichols, Buffalo, NY, *on the brief*), Syracuse, NY, *for Plaintiff-Appellant-Cross-Appellee Charles Malmberg*.

JOSHUA WALDMAN, U.S. Department of Justice (Benjamin C. Mizer, Acting Assistant Attorney General, Dana J. Martin, U.S. Department of Justice, *on the brief*), *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Washington, DC.

POOLER, *Circuit Judge*:

Charles Malmberg sued the United States under the Federal Tort Claims Act ("FTCA") after surgery at the Syracuse Veteran's Administration Medical Center ("VA") rendered him quadriplegic. After the liability portion of a bifurcated bench trial, the district court found the VA liable for Malmberg's injuries. *Malmberg v. United States*, 814 F. Supp. 2d 159, 167 (N.D.N.Y. 2011). The government does not appeal the district court's finding of liability.

Malmberg appeals from the August 21, 2014 judgment of the United States District Court for the Northern District of New York (Scullin, *J.*) awarding him damages of $4,468,859.91. *Malmberg v. United States*, No. 5:06-cv-1042 (FJS/TWD), 2014 WL 4184737, at *15-16 (N.D.N.Y. Aug. 21, 2014). Malmberg argues that the district court abused its discretion by (1) offsetting the award for future medical care and benefits by subtracting out for services that could be provided by the

4

1  VA for free, thus forcing him to receive medical services from his tortfeasor

2  rather than choosing his own medical providers in the future; (2) denying his

3  motion to amend his ad damnum clause to increase the amount of damages he

4  sought; and (3) awarding $2 million in damages for past and future pain and

5  suffering, which he contends is lower than comparable awards from New York

6  state courts for similar injuries.  The United States cross-appeals from the district

7  court's refusal to further offset the award for future medical care to reflect future

8  home health services provided by a third-party contractor paid for by the VA.

9      We vacate the district court's decision insofar as it offset the award for

10  future medical care and supplies.  Federal law does not require that a veteran

11  injured as a result of the VA's malpractice be forced to continue under VA care

12  for lack of financial resources and be subject to a concomitant offset, and New

13  York state law does not warrant such an offset.  In addition, we hold that the

14  district court failed to provide adequate analysis to support both its denial of

15  Malmberg's motion to amend his ad damnum clause and its decision to set the

16  award for past and future pain and suffering at $2 million, and we remand with

17  directions that the district court consider anew Malmberg's motion to increase

18  the ad damnum, taking into account the testimony of Dr. David Hunsinger, and

determine damages without an offset for future receipt of medical care and supplies from the VA, consistent with this opinion.  Finally, we affirm the district court's decision not to further offset the award for future home health services on the ground that the provision of such services going forward is not reasonably certain.

## BACKGROUND

Prior to the operation at issue, Malmberg suffered from symptoms primarily in his left arm – weakness, numbness and tingling.  He did not demonstrate any symptoms typically associated with spinal cord compression. On November 4, 2004, Malmberg underwent surgery at the VA to remove a degenerative disc and osteophytes (bony outgrowths usually associated with cartilage degeneration).  When he awoke from anesthesia, Malmberg complained that his legs were weak.  X-rays and an MRI revealed that he suffered from mild cord impingement at several points in his spine, with excessive edema in the spinal cord. He was diagnosed with incomplete quadriplegia.

Persons wishing to sue the federal government for money damages for personal injury must do so pursuant to the FTCA, which requires putative plaintiffs to first file an administrative claim.  28 U.S.C. § 2675(a).  Malmberg filed

his administrative claim in January 2006.  The VA effectively denied the claim by failing to act on it within six months.  *Id.*  ("The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.").  In August 2006, Malmberg sued the United States for the injuries he sustained.  The district court bifurcated the trial at Malmberg's request, and found the VA liable for Malmberg's injuries after the first portion of the trial. *Malmberg v. United States*, 814 F. Supp. 2d 159 (N.D.N.Y. 2011).

In December 2012, the district court held a bench trial to set the amount of damages.  The plaintiff's evidence indicated that before the November 2004 surgery, Malmberg lived independently, although he was not employed because of the radiculopathy.  He testified that prior to the surgery, he enjoyed an array of activities, socialized regularly and did not have problems with his legs, right arm, bladder or bowel.  Post-surgery, Malmberg has no use of his legs, cannot stand, and is confined to a wheelchair for the rest of his life.  He must now use a catheter, which needs to be inserted up to 15 times a day, gets repeated urinary tract infections and lacks control over his bowels.  Malmberg testified that he suffers from pain daily, ranging from a 7-to-10 on a 1-to-10 scale. As his

condition is not expected to improve, and will likely worsen, he will need assistance with daily living tasks for the rest of his life.

The district court ultimately awarded Malmberg $500,000 for past pain and suffering, $1.5 million for future pain and suffering, and $2,469,859.91 in economic damages.  The district court offset the economic damages award for future medical care by subtracting out for medical care and supplies that would be provided for free by the VA.  The district court declined to offset the award for the costs of home health services provided by third-party contractors but paid for by the VA.  Finally, the district court denied Malmberg's renewed motion to increase his ad damnum clause.  This appeal followed.

## DISCUSSION

Following a bench trial, we review the factual findings of the district court for clear error and its legal conclusions de novo.  *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1176 (2d Cir. 1995).

### I.     Offset for medical care and supplies to be provided by the VA.

The district court offset Malmberg's economic damages award by both the amount of past services provided by the VA, as well as the cost of future services that the VA will continue to provide free of charge.  The district court found that

1 the government should not be forced to pay for services that the VA could

2 provide for free, although it is not clear whether it relied on federal or state law

3 in reaching its conclusion.  Because of this, and because the government argues

4 that such an offset is required by both federal and state law, we address each.

5   As he did below, Malmberg concedes that the offset for past medical

6 services he received is proper.  However, Malmberg challenges the district

7 court's offset against the award for future medical services, arguing such an

8 offset is not required under either federal or state law, and that he should not be

9 forced by financial constraints to receive medical care from the tortfeasor

10 responsible for his injuries.  Whether such an offset against an award for future

11 medical costs is required in our Circuit is an open issue.  There are competing

12 rationales militating for and against such an offset.  On the one hand, as the

13 government reminds us, it is axiomatic that the government does not "pay twice

14 for the same injury."  *Brooks v. United States*, 337 U.S. 49, 53 (1949).  On the other

15 hand, it is, as this Court has recognized, particularly unseemly to force a plaintiff

16 to receive medical services from the tortfeasor responsible for his injuries.  *Ulrich*

17 *v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1084 (2d Cir. 1988).

*Ulrich* also involved a veteran who suffered an injury as a result of malpractice while being treated at a Veteran's Administration medical center. There, the district court refused—without explanation-- to award future medical damages.   In urging reversal, the appellant argued that he was denied future medical expenses "in part because the trial court believed the VA will provide him with free medical care in the future."  *Id.*  Unable to discern from the record the reason for the district court's decision to withhold such an award, the *Ulrich* court remanded with directions:

> It should be pointed out that any award for future medical expenses should not be limited on the ground that, as a veteran, plaintiff is entitled to free VA medical care, hospitalization, and institutionalization.  He is not obligated to seek medical care from the party whose negligence created his need for such care simply because that party offers it without charge.  Moreover, it is not relevant that Ulrich has sought treatment from VA hospitals in the past.  He has a right to select a doctor or private hospital of his own choice for his future medical needs.  Thus, the district court's failure to award future medical expenses was erroneous if and to the extent it relied on the premise that the VA will provide plaintiff free care in the future.  That this might result in a windfall for him is a matter for Congress, not the courts.

*Id.* at 1084 (internal citations omitted).

The government, viewing the language in *Ulrich* as dicta, urges reliance on a later case, *Morgan v. United States*, 968 F.2d 200 (2d Cir. 1992). In *Morgan*, the plaintiff was also a veteran awarded damages after he sought to recover under the FTCA for injuries as a result of medical malpractice at a VA hospital. This Court held that the damages award must be reduced by any amount awarded to the plaintiff under 38 U.S.C. § 351 (now 38 U.S.C. § 1151), which requires the government to make certain disability benefits payments to veterans injured through the fault of the VA. *Id.* at 201-02. The *Morgan* court so held because Section 351 required that when a veteran received a judgment as the result of such a disability, disability payments made pursuant to Section 351 were to be withheld "until the aggregate amount of benefits which would be paid but for this sentence equals the total amount included in such judgment, settlement, or compromise." 968 F.2d at 205 (quoting 38 U.S.C. § 351). The issue in *Morgan* was "whether the phrase 'total amount included in such judgment' was intended, as the government argue[d], to encompass the total amount of any FTCA award to a veteran for injuries resulting from VA medical treatment or was intended instead, as plaintiffs argue[d], to refer only to that portion of such an FTCA award which represents the veteran's lost earnings." *Id.* at 205. The Court

1   concluded "that 'total amount' means the total, not merely the lost earnings

2   component." *Id.*  In so doing, it relied on the express language of the statute,

3   coupled with legislative history for Section 351 "stat[ing] that the goal of the

4   setoff provision was 'to preclude duplicate recoveries for the same disability or

5   death.'" *Id.* at 207.  The government argues that *Morgan* requires an offset here,

6   because allowing an award for future medical care that could be provided by the

7   Veteran's Administration represents a potential duplicate recovery.

8        However, *Morgan* is distinguishable.  *Morgan* addressed only the scope of

9   the statutorily required setoff for Section 1151 (then Section 351) benefits.  Section

10  1151 disability benefits are a separate category of benefits, provided only to

11  veterans injured as a result of care provided by the Veteran's Administration,

12  from the medical care provided to all veterans by virtue of their service to the

13  United States, which is provided for in 38 U.S.C. § 1710.  The statutory language

14  and legislative history of Section 1151 both express a clear desire by Congress to

15  limit duplicative recoveries.  This desire makes sense, given that Section 1151

16  disability benefits are an administrative remedy for veterans injured or killed

17  while receiving care at Veteran's Administration hospitals, and a recovery under

18  the FTCA is essentially the same remedy.   Absent from the language and

legislative history for Section 1710 is the language prohibiting duplicative recoveries found in Section 1151.  It is one thing to require an offset for benefits that are meant to provide an alternative to tort damages, and another thing entirely to require an offset that would force a veteran to continue to receive medical care from his tortfeasor.

Nor do we find support for the government's position in *Brooks v. United States*, 337 U.S. 49 (1949).  There, the Supreme Court considered whether service members, who may not sue the United States for injuries received during their service, may sue for "injuries not incident to their service."  *Id.* at 50.  Answering in the affirmative, the Court remanded the case to the Fourth Circuit to consider, in the first instance, whether an offset should be taken for past medical care or disability benefits, noting that its holding:

> does not mean that the amount payable under servicemen's benefit laws should not be deducted, or taken into consideration, when the serviceman obtains judgment under the Tort Claims Act.  Without the benefit of argument in this Court, or discussion of the matter in the Court of Appeals, we now see no indication that Congress meant the United States to pay twice for the same injury.  Certain elements of tort damages may be the equivalent of elements taken into account in providing disability payments.  It would seem incongruous, at first glance, if the United States

should have to pay in tort for hospital expenses it had
already paid, for example.

*Id.* at 53-54.  On remand, the Fourth Circuit held that it was proper to offset any

award for "hospital or medical expenses which the government has paid or on

account of loss of earning power for the period for which he has drawn army

pay.  It seems equally clear that the award should be diminished by the amount

which he has received or is to receive from the government by way of disability

benefits." *United States v. Brooks*, 176 F.2d 482, 484 (4th Cir. 1949).  The Fourth

Circuit made no mention of an offset for future medical costs.

The Seventh Circuit examined the Supreme Court's decision in *Brooks* in

*Molzof v. United States*, 6 F.3d 461, 466 (7th Cir. 1993).  There, plaintiff was injured

as a result of medical malpractice at a VA hospital, suffering irreversible brain

damage that required continued hospitalization.  *Id.* at 463.  The district court,

relying on *Brooks*, found that requiring the government to pay for care that the

VA could provide for free would constitute "punitive damages," which are

barred by the FTCA.  *Id.*  The Seventh Circuit affirmed, but the Supreme Court

reversed, concluding that the FTCA "bars the recovery only of what are *legally*

considered 'punitive damages' under traditional common-law principles."

14

1   *Molzof v. United States*, 502 U.S. 301, 312 (1992).  On remand, the Seventh Circuit

2   found:

3           *Brooks* is not controlling.   In the present case, the
4           Supreme Court decided, at least implicitly, that nothing
5           under the FTCA or other provision of federal law
6           prohibited the government from paying twice for future
7           medical expenses.  The Court concluded that awarding
8           future expenses in the light of free care was not
9           punitive.  Whether such an award is permissible, the
10          Court indicated, was a matter of state law.  Thus, the
11          issue with which we are confronted on remand is not
12          what Congress intended, but rather whether *state law*, in
13          particular, Wisconsin law, permits double payment.

14

15  6 F.3d at 464 (internal citation omitted).

16          We agree, and hold that federal law does not require an offset against a

17  veteran's damages award for future medical care that could be provided at a VA

18  facility.   Federal law disfavors an outcome whereby a litigant is "obligated to

19  seek medical care from the party whose negligence created his need for such care

20  simply because that party offers it without charge."  *Ulrich*, 853 F.2d at 1084.  *See*

21  *also Feeley v. United States*, 337 F.2d 924, 934–35 (3d Cir. 1964) (same).  As aptly

22  stated by the Third Circuit:

23          A victim of another's tort is entitled, we think, to
24          choose, within reasonable limits, his own doctor and
25          place of confinement, if such care is necessary.  To force

a plaintiff to choose between accepting public aid or
bearing the expense of rehabilitation himself is an
unreasonable choice. The plaintiff may not be satisfied
with the public facilities; he may feel that a particular
private physician is superior; in the future because of
over-crowded conditions he may not even be able to
receive timely care. These are only a few of many
considerations with which an individual may be faced
in selecting treatment. The plaintiff's past use of the
government facilities does not ensure his future use of
them. He will now have the funds available to him to
enable him to seek private care. He should not be
denied this opportunity.

*Feeley*, 337 F.2d at 935.

Our analysis, however, does not end there. Damages in FTCA actions are

determined by the law of the state in which the tort occurred, *Ulrich*, 853 F.2d at

1081-82, so even if federal law does not require an offset we must next consider

whether such an offset is warranted under state law. In New York, collateral

source payments are governed by N.Y. CPLR § 4545, which, at the time

Malmberg commenced the instant suit, provided in relevant part that:

In any action brought to recover damages for personal
injury . . . where the plaintiff seeks to recover for the
cost of medical care, dental care, custodial care or
rehabilitation services, loss of earnings or other
economic loss, evidence shall be admissible for
consideration by the court to establish that any such
past or future cost or expense was or will, with

reasonable certainty, be replaced or indemnified, in
whole or in part, from any collateral source such as
insurance (except for life insurance), social security
(except those benefits provided under title XVIII of the
social security act), workers' compensation or employee
benefit programs (except such collateral sources entitled
by law to liens against any recover of the plaintiff).  If
the court finds that any such cost or expense was or
will, with reasonable certainty, be replaced or
indemnified from any collateral source, it shall reduce
the amount of the award by such finding, minus an
amount equal to the premiums paid by the plaintiff for
such benefits for the two-year period immediately
preceding the accrual of such action and minus an
amount equal to the projected future cost to the plaintiff
of maintaining such benefits.

N.Y. C.P.L.R. § 4545(c) (McKinney 2006).[2]

At common law, a plaintiff's award for economic damages such as medical

costs was not offset by payments from collateral sources such as insurance.  *Oden*

*v. Chemung Cty. Indus. Dev. Agency*, 87 N.Y.2d 81, 85-86 (1995).  The traditional

rule was "based on the premise that a negligent defendant should not, in

fairness, be permitted to reduce its liability by the proceeds of insurance or some

other source to which that defendant has not contributed."  *Id.* at 85.  The

common-law rule was abrogated by statute, and as Section 4545(c) "is a statute

---

[2] Section 4545(c) was amended in November of 2009 and redesignated as section 4545(a), but the amendment does not apply to this case, which was commenced in 2006. *See* 2009 Sess. Laws News of N.Y. Ch. 494, pt. F, §§ 2, 9 (S. 66002) (McKinney's).

enacted in derogation of the common law . . . it is to be strictly construed . . . in the narrowest sense that its words and underlying purposes permit." *Id.* at 85.

Section 4545 is silent as to the issue before us: whether an injured plaintiff is subject to an offset because he is entitled to receive *services* from a tortfeasor responsible for his injuries.  The parties do not cite, and we have not found, any cases dealing with the  applicability of Section 4545 to  medical services provided by the Veteran's Administration.

The plain language of Section 4545, however, suggests that a tortfeasor's offer to provide a plaintiff  with free medical services at the torfeasor's facility does not warrant an offset against the damages award.  Section 4545 provides for a reduction of the damages award with respect to costs of medical care "[i]f the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any collateral source."  If the plaintiff seeks medical care from a non-VA provider—which, as discussed, is his prerogative— the costs of that medical care cannot be regarded as "replaced or indemnified" merely because the plaintiff elected not to accept the opportunity to receive free medical care from the VA.  Indeed, the government has not demonstrated that,

under these circumstances, plaintiff's future medical care costs "will, with reasonable certainty, be replaced or indemnified from any collateral source."

Moreover, in an analogous context, several New York trial courts have declined to offset awards intended to provide plaintiffs with medical services in the future, in part because such an offset would deprive plaintiffs of the ability to choose their own medical services caregiver. In *Andrialis v. Snyder*, an infant injured as a result of the defendants' medical malpractice was awarded damages to provide for future medical services, including physical, occupational and speech therapy. 603 N.Y.S.2d 670 (N.Y. Sup. Ct. N.Y. Cty. 1993).  Defendants sought an offset pursuant to Section 4545 on the ground that "the infant plaintiff would be eligible under certain circumstances to receive physical therapy, occupational therapy, speech therapy and psychotherapy" provided for free from her school district.  *Id.*  The trial court declined to offset the damages on the grounds that the provision of such services by the state was not reasonably certain, noting that such an offset would mean that:

> the parents could not select the therapist.  The infant plaintiff would be treated only by those practitioners approved by the Board of Education and the State Education Department who would be paid a contractual rate arrived at by competitive bidding.

*Id.* The *Andrialis* court further observed that:

> A distinction can be made between insurance policies or
> statutes that provide payment for medical services by
> practitioners or institutions selected by the patient and a
> statute which may provide services by practitioners or
> institutions selected by a government agency.  Should a
> plaintiff who may be entitled to medical services
> without charge at a Veteran's Administration facility be
> precluded from recovering for future medical or
> hospital expenses?

*Id.  See also, e.g., Giventer ex rel. Giventer v. Rementeria*, 705 N.Y.S.2d 863 (N.Y. Sup.

Ct. Rich. Cty. 2000) ("The jury's awards will permit Evan and his parents to

obtain the care that they choose, from doctors and nurses of their choice, without

any limitations such as pre-approval or being on a list for treatment or any other

constraints which accompany managed care.  An HMO would not replace what

the jury awarded and cannot give rise to a collateral source offset."); *Ventura v.

Fisher*, 798 N.Y.S.2d 714 (N.Y. Civ. Ct. Kings Cty. 2004) (same) (collecting cases).

The Second Department expressed a similar reluctance to cabin future

treatment choices in the context of considering whether Section 4545 required an

offset where the plaintiff's health insurance coverage flowed through her

husband's employer. *Kihl v. Pfeffer*, 848 N.Y.S.2d 200 (2d Dep't 2007).   In

considering whether it was "reasonably certain" the insurance coverage would be available in the future, the Appellate Division noted that her "receipt of future collateral source benefits is not within her own control, but rather, is wholly dependent upon the continued employment of her husband." *Id.* While Section 4545 aimed to prevent "double recoveries," it was "not meant to enslave a health care beneficiary to a particular employer or insurance provider." *Id.* Taking into account that concern, along with other factors, the Second Department affirmed the trial court's decision not to offset, noting that "[i]n many cases, no one factor, standing alone, will necessarily support the grant or denial of collateral source reductions." *Id.* Instead, "[e]ach case involving potential future collateral source reductions to awards for economic loss must be judged on its own unique facts and merits." *Id.*

Based on the plain language of Section 4545, and the "unique facts and merits" presented here, we vacate the district court's decision insofar as it offset Malmberg's award for future medical services and supplies that could be provided by the VA for free. There is, as the *Andrialis* court noted, a difference between insurance policies that allow patients to select their own providers and reimburse payments for those services, and programs that allow government

agencies to select medical providers for the patients.  Malmberg should not be forced by virtue of his finances to continue to accept medical care from the tortfeasor responsible for his injuries.  *See also Molzof*, 6 F.3d at 468 ("[W]e share the reluctance of other courts addressing this issue to deny the plaintiff the freedom to choose his medical provider and, in effect, to compel him to undergo treatment from his tortfeasor.").

Finally, we find that Malmberg's satisfaction—or lack thereof—with the care being provided by the VA is simply not relevant to the analysis of whether there should be an offset for future medical services.[3]  We recognize, as other courts have, that there is some risk of a double recovery to the extent Malmberg elects to continue receiving services from the VA, but any such concern is for Congress and not this Court.  *See Ulrich*, 853 F.2d at 1084; *Feeley*, 337 F.2d at 935.

As we find that the district court improperly offset Malmberg's damages award to the extent that it offset for future medical services and supplies that

---

[3]  The district court relied on testimony from Malmberg's treating physician to support its conclusion that Malmberg was satisfied with his care at the VA:

> Q: Yes, sir, are you aware of that, that Mr. Malmberg is satisfied with the care and treatment he's receiving from Dr. Thompson?
>
> A: He has expressed that it is helpful to him.

*Malberg*, 2014 WL 4184737, at *7.  The district court did not address Malmberg's testimony that if he had the financial means to do so, he would seek treatment elsewhere.

22

could be provided by the VA for free, we need not reach Malmberg's arguments that either (1) the government waived its right to an offset by not seeking one until after Malmberg rested in the damages trial; or (2) that the district court abused its discretion in accepting a late expert report from the government raising the issue for the first time.  On remand, the district court shall adjust its damages calculations to no longer offset for the costs of future medical services and supplies.  In addition, both parties have noted certain mathematical errors in the district court's final damages award, which the district court should correct on remand.

## II.   The ad damnum clause.

Before filing a personal injury lawsuit, the FTCA requires a plaintiff to first file an administrative claim with the appropriate federal agency.  28 U.S.C. § 2675(a).  If the federal agency denies the claim, a plaintiff may bring such a lawsuit in federal court, but the damages sought in such a lawsuit may not exceed the amount sought in the administrative claim:

> Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the

1       claim to the federal agency, or upon allegation and
2       proof of intervening facts, relating to the amount of the
3       claim.

4

5  28 U.S.C. § 2675(b).

6       "The FTCA, as a statute waiving sovereign immunity, must be complied

7  with strictly." *O'Rourke v. E. Air Lines, Inc.*, 730 F.2d 842, 856 (2d Cir. 1984),

8  *abrogated on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991).  To

9  recover damages in excess of the amount set forth in the administrative claim,

10  then, one of the two exceptions set forth in the statute must apply: "the increased

11  amount is based upon newly discovered evidence not reasonably discoverable at

12  the time of presenting the claim to the federal agency," or there is "proof of

13  intervening facts, relating to the amount of the claim."  28 U.S.C. § 2675(b).  The

14  plaintiff bears the burden of demonstrating that one of the exceptions applies.

15  *Cf. O'Rourke*, 730 F.2d at 856.  We review a district court's finding regarding

16  "newly discovered evidence" and "intervening facts" for clear error.  *See, e.g.*,

17  *Zurba v. United States*, 318 F.3d 736, 739 (7th Cir. 2003).

18       Malmberg sought damages of $6,000,000 when he filed his administrative

19  claim, and requested that amount in his ad damnum when he eventually filed

20  suit.  In July 2012, he moved to increase the ad damnum to $15,000,000.  Shortly

1   thereafter, he sought to amend that motion, seeking to further increase the ad

2   damnum to $25,000,000.  Malmberg argued that an increased ad damnum was

3   necessary because (1) when he filed his administrative claim in 2006, the full

4   extent of his injuries and their lasting effect were not known and were

5   unforeseeable; and (2) between 2006 and 2012, New York courts in four cases

6   increased the amounts awarded for pain and suffering for similar injuries to

7   between $10,000,000 and $35,000,000, and this evolution of the law was

8   unforeseeable.

9        The district court denied the motion in October 2012, finding that while

10  Malmberg's

11          condition has deteriorated, and arguably has
12          deteriorated significantly, since the time he filed his
13          administrative claim in January 2006, Plaintiff has failed
14          to point to any evidence in the record to demonstrate
15          that this deterioration is anything more than the wors[t]
16          case scenario for the injuries he suffered as a result of
17          Defendant's negligence.  Moreover, he has failed to
18          demonstrate that this wors[t] case scenario was not
19          reasonably foreseeable at the time that he filed his
20          administrative claim.  In fact, in his administrative
21          claim, he stated that "the care [he received] prior,
22          during and after surgery was rendered negligently ...
23          [and that] [a]s a result of this negligent treatment [he
24          was] left with paralysis involving all extremities."
25

*Malmberg v. United States*, No. 5:06-cv-1042 (FJS/TWD), 2012 WL 4953091, at *2 (N.D.N.Y. Oct. 15, 2012) (alteration omitted).

The district court's finding based on the record before it in 2012 is not clearly erroneous.  In *O'Rourke*, we observed that "other courts that have ruled on the scope of [section 2675(b)] have granted motions to amend *ad damnum* clauses only when an unexpected change occurred either in the law or in a medical diagnosis." *O'Rourke*, 730 F.2d at 856.  Here, the district court found that Malmberg failed to demonstrate that the evidence he presented to support that motion was "either material or newly discovered evidence that he could not have reasonably discovered prior to filing his administrative complaint." *Malmberg*, 2012 WL 4953091, at *6.  In light of the record evidence of Malmberg's extensive injuries at the time he filed his 2006 administrative claim, this finding is not clearly erroneous.

However, when Malmberg again moved to increase the ad damnum in May 2013, after the bench trial on damages, the record was materially different. During the trial, Dr. David Hunsinger, Malmberg's treating physician at the VA, testified that the extent of Malmberg's deterioration was *not foreseeable* in 2006:

1  Q:   Okay.  In this case Mr. Malmberg filed a claim,
2      this claim in 2006, and I just want to ask you, and I'll
3      take you in particular, in 2006, as far as you were
4      concerned, was it reasonably foreseeable that you
5      would be able to predict the deterioration that he has
6      today in his medical status?

7

8  A:   No.
9  App'x at 618-19.

10      In denying the renewed motion to increase the ad damnum, the district

11  court found that "[t]here is no evidence from the record, specifically in reviewing

12  the transcript of the damages trial, that Plaintiff should be able to change the

13  specific amount of damages he claims."  *Malmberg*, 2014 WL 4184737, at *15.

14  Because it is not clear from the above statement whether the district court

15  overlooked Hunsinger's testimony, or considered and rejected the testimony, we

16  vacate the denial and remand with instructions that the district court consider

17  the motion to increase the ad damnum anew, taking into account Hunsinger's

18  testimony.

19  **III.   The award for pain and suffering.**

20      We review a district court's finding of facts in support of its FTCA

21  damages award for clear error, *Presley v. United States Postal Serv.*, 317 F.3d 167,

22  174 (2d Cir. 2003), but we review the nature and measure of its FTCA damages

award according to the law of the state in which the tort occurred, *see, e.g., Bravo v. United States*, 532 F.3d 1154, 1160-61 (11th Cir. 2008); *Davis v. United States*, 375 F.3d 590, 591 (7th Cir. 2004).

In determining Malmberg's award for pain and suffering, the district court set forth the injuries suffered by Malmberg as a result of the VA's malpractice, to wit:

> 1. He has lost the ability to stand, walk, or use his legs.
> 2. He has very limited use of his hands, and what he has is diminishing as time passes.
> 3. He suffers from daily uncontrollable spasms in which his legs uncontrollably bounce around.
> 4. He has incontinence of urine requiring multiple self-catheterizations daily causing spillage of urine, periodic urinary tract infections, and repeated so[i]ling of his clothes and bedding.
> 5. He has bowel incontinence resulting in accidents in which he soils his clothes and bedding.
> 6. He has had significant long-standing decubitus ulcers which he will be at risk for all of his life.
> 7. He has frequent bouts or episodes of constipation and diarrhea and abdominal pain.
> 8. He has significant daily physical pain requiring daily pain medications to help partially control his pain.
> 9. The medications he takes affect his ability to concentrate and impact his ability to remain alert.
> 10. He has loss of sexual function.
> 11. He has significant psychological issues because of all of his physical disabilities. Psychological problems include frequent nightmares, constant fear of having

28

"accidents" concerning his bladder and his bowel resulting in his being fearful of leaving his home, being fearful of getting fat and not being able to operate his wheelchair, even though as the Court knows, he has been unable to eat as any normal person would do, being consumed by his disabilities, and ongoing depression.

12. He has lost his independence and must rely on others for many of the most basic needs.

13. He has difficulty maneuvering his wheelchair even in his own home and is forced to deal with accessibility problems on a daily basis.

14. He has to face the daily multiple issues that a catastrophically injured person experiences that able-bodied individuals often do not appreciate and ignore.

*Malmberg*, 2014 WL 4184737 at *12.  Neither party challenges these findings of fact.

The district court then provided the following explanation for its pain and suffering award:

As evidenced above, the significant changes to Plaintiff's life are severe and real.  They are not, in any sense, mere speculation.  Unequivocally, Plaintiff's injuries are permanent, devastating, and catastrophic.  The range in New York is normally between $500,000 and $1,500,000 dollars for a pain and suffering award.  Therefore, the Court will award Plaintiff $500,000 for past pain and suffering and $1,500,000 for future pain and suffering.

*Id.*

29

1    This sparse analysis by the district court provides little on which we may

2    base our review, and thus fails as a matter of law.  *See Arpin v. United States*, 521

3    F.3d 769, 776 (7th Cir. 2008) (noting that when a district court determines the

4    amount of damages following a bench trial, "the judge must indicate the

5    reasoning process that connects the evidence to the conclusion" (internal

6    quotation marks omitted)).

7    Acknowleding that "personal injury awards, especially those for pain and

8    suffering, are subjective opinions which are formulated without the availability,

9    or guidance, of precise mathematical quantification," *Reed v. City of New York*, 757

10   N.Y.S.2d 244, 248 (1st Dep't 2003), here, the district court failed to provide

11   sufficient rationale for its award.  It did not, for example, point to a single case or

12   jury award to support its conclusion that the range in New York for pain and

13   suffering awards for plaintiffs who suffered permanenant and catastrophic

14   injuries  injuries "is normally between $500,000 and $1.5 million."  Indeed, the

15   only quadriplegia cases it cited appear in a footnote, and each provides for a far

16   greater recovery than the district court awarded here.  *Malmberg*, 2014 WL

17   4184737 at *10 n.15 (citing *Saladino v. Stewart & Stevenson Servs., Inc.*, No. 01 Civ.

18   7644(SLT), 2011 WL 284476, at *11 (E.D.N .Y.  Jan. 26, 2011), *aff'd*, 500 F. App'x 69

(2d Cir. 2012) ($15 million award did not deviate materially from reasonable compensation); *Barnhard v. Cybex Int'l, Inc.*, 864 N.Y.S.2d 378 (4th Dep't 2008) (award of $3 million for past pain and suffering and $9 million for future pain and suffering); *McMillan v. City of New York*, Nos. 03–CV–6049, 08–CV–2887, 2008 WL 4287573 (E.D.N.Y. Sept. 19, 2008) (award of $4 million for past pain and suffering and $7.5 million for future pain and suffering)).

Absent further analysis and clearer reasoning by the district court, we cannot make a fair determination about whether the pain and suffering award is inadequate.  We thus vacate the award of damages for past and future pain and suffering.  Because we do not decide at this time the adequacy of the award, we need not decide the appropriate standard of review applicable for a district court's FTCA damages award where the nature and measure of damages is governed by New York law.  The district court is free, on remand, to set damages as it sees fit, but it must explain its rationale.

## IV.    The cross-appeal.

In its cross-appeal, the United States argues that the district court abused its discretion by failing to make an offset for VA-provided home health services. We disagree.  Section 4545(c) requires that a defendant prove that future costs

31

"will, with reasonable certainty, be replaced or indemnified, in whole or in part,

from any collateral source."  "Reasonable certainty" means that "the court must

find that the plaintiff is legally entitled to the continued receipt of such collateral

source, pursuant to a contract or otherwise enforceable agreement, subject only

to the continued payment of a premium and such other financial obligations as

may be required by such agreement."  C.P.L.R. § 4545(c) (now codified at

C.P.L.R. § 4545(a)).

   We agree with the district court that the government failed to demonstrate,

with reasonable certainty, that the home health services would continue to be

funded by the VA.  While Malmberg's court-endorsed life care plan calls for 21

hours per week of such services until Malmberg reaches the age of 62, and 18

hours daily thereafter, the government admits that the VA's standard policy

provides only 14 hours a week of care.  The record reflects that, to the extent

Malmberg requires more than 14 hours of weekly care, he must obtain multiple,

contingent approvals, including periodic submissions for review.  In the absence

of evidence demonstrating the requisite "reasonable certainty," we leave

undisturbed the district court's judgment on this issue.

1 ## CONCLUSION

2     For the reasons given above, the decision of the district court is affirmed in

3 part and vacated in part, and remanded for further proceedings consistent with

4 this opinion.

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit