**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**CHARLES MALMBERG,**

        **Plaintiff,**

    v.              **5:06-CV-1042**
                      **(FJS/TWD)**

**UNITED STATES OF AMERICA,**

        **Defendant.**

_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **OFFICE OF ROBERT B. NICHOLS**<br>716 Brisbane Building<br>403 Main Street<br>Buffalo, New York 14203<br>Attorneys for Plaintiff | **ROBERT B. NICHOLS, ESQ.** |
| **HANCOCK ESTABROOK, LLP**<br>100 Madison Street, Suite 1500<br>Syracuse, New York 13202<br>Attorneys for Plaintiff | **ALAN J. PIERCE, ESQ.** |
| **OFFICE OF THE UNITED<br>STATES ATTORNEY**<br>James Hanley U.S. Courthouse<br>& Federal Building<br>100 South Clinton Street<br>Syracuse, New York 13261-7198<br>Attorneys for Defendant | **WILLIAM F. LARKIN, AUSA**<br>**KAREN FOLSTER LESPERANCE, AUSA** |

**SCULLIN, Senior Judge**

**AMENDED MEMORANDUM-DECISION AND ORDER**[1]

**I. BACKGROUND**

Plaintiff commenced this action on September 15, 2006, seeking to recover damages for injuries he sustained in November 2004 during the course of an anterior cervical disectomy and fusion procedure at the Syracuse VA Medical Center. After bench trials on liability and damages, this Court concluded that the Government was liable for Plaintiff's injuries and awarded him $4,468,859.91 in damages. *See* Dkt. No. 146 ("*Malmberg I*"). Both parties appealed various aspects of this award.

In *Malmberg v. United States*, 816 F.3d 185 (2d Cir. 2016) ("*Malmberg II*"), the Second Circuit vacated the damages award and directed this Court to reconsider whether Plaintiff should be permitted to amend the *ad damnum* clause in his complaint to increase the amount of damages requested and to explain its rationale for awarding $2 million in damages for Plaintiff's past and future pain and suffering.

After remand, this Court denied Plaintiff's motion to increase the *ad damnum* clause and concluded that, in light of its decision concerning the *ad damnum* clause,

> there [was] no reason for the Court to address how the $2.5 million award for past pain and suffering compares to awards in cases involving plaintiffs with comparable injuries because, even if the Court were to find that comparable cases warranted an increase, any such increase would be limited to a maximum of $511,320. . . .

*See* Dkt. No. 171, Memorandum Decision and Order dated April 13, 2018, at 19 n.3 ("*Malmberg III*").

Both parties appealed. On appeal, both parties contested whether this Court had clearly

---

[1] The Court is issuing this "Amended Memorandum-Decision and Order" to correct a mathematical error in the calculation of damages.

erred in denying Plaintiff's request to increase the *ad damnum* from $6 million to $25 million.  The Second Circuit concluded that this Court had erred and, therefore, reversed that aspect of this Court's judgment and remanded for this Court "to determine anew the damages owed to [Plaintiff], taking into account an increased *ad damnum* of $25 million, which fixes the ceiling on the maximum recoverable damages." *See* Dkt. No. 182, Mandate ("*Malmberg IV*"), at 6.

On appeal, Plaintiff also argued, and the Government agreed, that this Court had failed to explain sufficiently its award for past and future pain and suffering. *See id.*  Therefore, the Second Circuit "vacate[d] this aspect of the damages award" and instructed this Court "to consider whether its initial pain and suffering award complies with New York law and to explain the basis for its decision." *See id.* at 7.  The Second Circuit also instructed this Court to "take into account, among other things, awards in comparable cases." *See id.*

Finally, on appeal, the Government contended, and Plaintiff did not dispute, that this Court "failed to correctly offset the damages award by the amount of disability payments [Plaintiff] has received under 38 U.S.C. § 1151." *See id.*  The Second Circuit agreed and, therefore, "vacate[d] this aspect of the damages award and direct[ed] [this] Court to offset the final award by the amount of § 1151 benefits that [Plaintiff] receives through the date of any amended judgment entered on remand." *See id.*

Pending before the Court are the parties' submissions addressing the issues that the Court must decide in light of the Second Circuit's August 15, 2019 Mandate, *Malmberg IV*, which reversed in part, vacated in part, and remanded this matter for further proceedings consistent with that Mandate.

## II. DISCUSSION

"'Although there is no precise rule for determining damages for pain and suffering, a trier of fact is bound by a standard of reasonableness.'" *Davis v. Yisrael*, No. 16 CV 1574 (LMS), 2019 WL 2098151, *2 (S.D.N.Y. May 14, 2019) (quoting *Battista v. United States*, 889 F. Supp. 716, 727 (S.D.N.Y. 1995) (citing *Paley v. Brust*, 21 A.D.2d 758 (1st Dep't 1964))). "'[A] review of jury awards and settlement amounts in recent New York cases involving comparable injuries suffered under comparable circumstances, while not binding, provides helpful guidance to the court in determining a reasonable range for the value of non-economic damages to be awarded in this case.'" *Id.* (quoting *Robinson v. United States*, 330 F. Supp. 2d 261, 295-96 (W.D.N.Y. 2004)); (citing *Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457 (E.D.N.Y. 2003) (explaining that "[a]ssigning dollar amounts to pain and suffering is an inherently subjective determination") (citations omitted); *Berroyer v. United States*, 990 F. Supp. 2d 283, 309 (E.D.N.Y. 2014) ("The Court also recognizes that the facts of each case are different and there may be case-specific variables that reasonably lead to a higher or lower amount in damages.")).

In their papers, the parties referred to more than twenty cases. The Court has reviewed all of those cases, as well as several others, to guide its decision regarding the amount of damages to award Plaintiff. In addition, to take inflation into account, the Court has converted the awards in those cases to 2019 Dollars using the US Inflation Calculator.[2]

After reviewing the relevant cases, the Court has compiled a table of representative cases that present a reasonable range of awards for non-economic damages in cases in which the injuries

---

[2] According to this Calculator, through January 2020, the latest Consumer Price Index is 256.974 and the Inflation Rate is 2.3%. *See* www.usinflationcalculator.com (last visited January 28, 2020).

that the plaintiffs suffered are similar to the injuries that Plaintiff suffered in this case. These cases provide helpful guidance to the Court in determining the appropriate amount of damages for past and future pain and suffering to award in this case.

| Case Name | Year of Award | Injuries | Award | 2019 Dollars (December 2019) |
|---|---|---|---|---|
| *Saladino v. Stewart & Stevenson Servs., Inc.*, No. 01-CV-7644 (SLT) (JMA), 2011 WL 284476 (E.D.N.Y. Jan. 26, 2011), *aff'd sub nom Saladino v. Am. Airlines, Inc.*, 500 F. App'x 69 (2d Cir. 2012) | 2011; upheld by 2d Cir. 2012 | quadriplegic (37 year old male at time of accident) (by time of verdict, injury 11 years ago and life expectancy of 24 years) | **$5 million** (past pain and suffering); **$10 million** (future pain and suffering) | **$5,682,807.34** (past) **$11,365,614.68** (future) **Cumulative rate of Inflation: 13.7%** **Total award: $17,048,422.02** |

| Case Name | Year of Award | Injuries | Award | 2019 Dollars (December 2019) |
|---|---|---|---|---|
| *Barnhard v. Cybex Int'l, Inc.*, 89 A.D.3d 1554 (4th Dep't 2011) | 2011 | quadriplegic | on appeal, reduce award to **$3 million** (past pain and suffering); **$9 million** (future pain and suffering) - remittitur (maximum amounts jury could have awarded) | **$3,409,684.40** (past)<br><br>**$10,229,053.21** (future)<br><br>**Cumulative rate of Inflation: 13.7%**<br><br>**Total award: $13,638,737.61** |
| *McMillan v. City of New York*, Nos. 03-CV-6049, 08-CV-2887, 2008 WL 4287573 (E.D.N.Y. Sept. 17, 2008) | 2008 | quadriplegic | **$4.5 million** (past pain and suffering (injured in 2003)); **$7.5 million** (future pain and suffering (age 44 when judgment entered)) | **$5,343,429.96** (past)<br><br>**$8,905,716.59** (future)<br><br>**Cumulative rate of Inflation: 18.7%**<br><br>**Total award: $14,249,146.55** |
| *Coniker v. State of New York*, 2002 WL 32068270 (N.Y. Ct. of Claims 2002) | 2002 | quadriplegic; 23 years old at time of accident in 1992 | **$1 million** (past pain and suffering - 9 years); **$2.5 million** (future pain and suffering 30 years) | **$1,421,106.17** (past)<br><br>**$3,552,765.43** (future)<br><br>**Cumulative rate of Inflation: 42.1%**<br><br>**Total award: $4,973,871.60** |

| Case Name | Year of Award | Injuries | Award | 2019 Dollars (December 2019) |
|---|---|---|---|---|
| *Auer v. State of New York*, 289 A.D.2d 626 (3d Dep't 2001) | 2001 | quadriplegic; accident occurred in 1990 when she was 18 | found award of $750,000 for future pain and suffering inadequate and raised to **$1.5 million** (38 years) | **$2,166,584.75**<br><br>**Cumulative rate of Inflation: 44.4%** |
| *Brown v. City of New York*, 275 A.D.2d 726 (2d Dep't 2000) | 2000 | dove off pier, struck head, rendered him quadriplegic; brother rendered pentaplegic | **$1 million** (past pain and suffering); **$3 million** (future pain and suffering) - remittitur for both | **$1,484,651.57** (past)<br>**$4,453,954.70** (future)<br><br>**Cumulative rate of Inflation: 48.5%**<br><br>**Total award: $5,938,606.27** |
| *Driscoll v. New York City Transit Auth.*, 262 A.D.2d 271 (2d Dep't 1999) | 1999 | quadriplegic, 19 years old | **$900,000** (past pain and suffering); **$1.1 million** (future pain and suffering) - remittitur | **$1,381,100.24** (past)<br>**$1,688,011.40** (future)<br><br>**Cumulative rate of Inflation: 53.5%**<br><br>**Total award: $3,069,111.64** |

In 2014, when the Court issued its first Memorandum-Decision and Order related to damages in this case, the Court awarded Plaintiff $500,000 for past pain and suffering (10 years) and $1,500,000.00 for future pain and suffering (26 year life expectancy). Now, approximately 5.5

years later, the past pain and suffering award should account for 15.5 years and the future pain and suffering should be based on 20.5 year life expectancy. Furthermore, the Court's 2014 decision was based in part on the limit of the *ad damnum* clause which was $6,000,000. After the Second Circuit's mandate in *Malmberg IV*, the *ad damnum* is now $25,000,000.

After reviewing the relevant case law, the Court finds that it would be reasonable to award Plaintiff damages for past pain and suffering in the amount of **$7,500,000** and damages for future pain and suffering in the amount of **$10,500,000**. The Court comes to this conclusion based, in large measure, on the thorough analysis of the court in *Saladino v. Stewart & Stevenson Servs., Inc.*, No. 01-CV-7644 (SLT) (JMA), 2011 WL 284476 (E.D.N.Y. 2011), *aff'd sub nom Saladino v. Am. Airlines, Inc.*, 500 F. App'x 69 (2d Cir. 2012), which this Court finds persuasive. In that case, the trial court noted that "[b]oth federal and state courts have long acknowledged that, in contrast to economic damages, awards for pain and suffering 'do not lend themselves as easily to computation,' *In re Joint Eastern and Southern Dist. Asbestos Litig.*, 9 F. Supp. 2d 307, 311 (S.D.N.Y. 1998), and a precise measure is simply 'impossible,' *Braun v. Ahmed*, 127 A.D.2d 418, 424, 515 N.Y.S.2d 473 (2nd Dep't 1987)." *Saladino*, 2011 WL 284476, at *3. "In truth, '[a]ssigning dollar amounts to pain and suffering is an inherently subjective determination.'" *Id.* (quoting *Marcoux*, 290 F. Supp. 2d at 478).

In reaching its decision on non-economic damages in that case, the *Saladino* court noted that, "[i]n several recent cases, New York courts ha[d] sustained pain and suffering awards to paralysis victims of at least $10 million and up to $17.5 million." *Id.* at *6. The court further explained that it was "'not trying to ascertain an average award based on comparable cases," but instead [was] trying 'to assess what amount is the highest amount of compensation allowable based

on the evidence, that would not deviate materially from reasonable compensation.'" *Id.* (quoting *Okraynets*, 555 F. Supp. 2d at 429 (quotation marks omitted)).

In particular, the court compared the plaintiff's award to that of the plaintiff in *Tenuto v. Lederle Labs.*, No. 1134/81, 2010 WL 625223 (N.Y. Sup. Feb. 17, 2010) (Table), in which the trial court had sustained an aggregate pain and suffering award of $17.5 million to a plaintiff who contracted contact polio from his infant daughter after she had received a vaccination. The court explained that, as with the plaintiff, "Mr. Tenuto's injuries 'cost him his job, his marriage, and the loss of enjoyment of life. He lives in a small handicapped accessible apartment [and] uses a wheelchair to get around.'" *Id.* (quoting [*Tenuto*, 2010 WL 625223] at *16). The court also noted that, in *Tenuto*, "[t]he court [had] sustained the award in part because Mr. Tenuto had waited 30 years for his day in court [while] Mr. Saladino was injured nearly 11 years ago and ha[d] a life expectancy of 24 years." *Id.* Furthermore, the court explained that, although Mr. Tenuto was a permanent paraplegic, "Mr. Saladino's injuries had left him a quadriplegic incapable of caring for himself in any way." *Id.* Therefore, the court concluded that the aggregate award of $15 million for pain and suffering, which was less than the award to Mr. Tenuto, was not excessive. *See id.*

The *Saladino* court also compared the plaintiff's injuries to those of the plaintiffs in the following cases: *Miraglia v. H & L Holding Corp.*, 5 Misc. 3d 1021(A), 799 N.Y.S.2d 162 (Sup. Ct., Bronx Cty., 2004), involving a 45-year-old construction worker who became a paraplegic after suffering injuries when he fell into a trench and became impaled on a rebar, in which the appellate division had reduced his award to $5 million for past and $5 million for future (35 years) pain and suffering; *Bissell v. Town of Amherst*, 56 A.D.3d 1144, 867 N.Y.S.2d 582 (4th Dep't 2008), in which "the court approved an award of $3 million for approximately five years of past pain and

-9-

suffering and $7 million for 32.7 years of future pain and suffering for a plaintiff who experienced incontinence, sexual dysfunction, chronic excruciating pain, and had no motor function below his knees"; *Ruby v. Budget Rent-A-Car Corp*, 23 A.D.3d 257, 806 N.Y.S.2d 12 (1st Dep't 2005), in which the plaintiff "was rendered a paraplegic at the age of 25, suffering complications like chronic pain, incontinence, psychological effects, and loss of sexual function" and, in which, "[t]he appellate court reduced the jury award to $2 million for past pain and suffering and $8 million for future pain and suffering based on a life expectancy of 44.6 years"; and *Okraynets v. Met. Transp. Auth.*, 555 F. Supp. 2d 420 (S.D.N.Y. 2008), in which the plaintiff "was injured when he fell from a wall and equipment landed on him," rendering him "a paraplegic and suffered from infection, incontinence, chronic pain, loss of sexual function, and other associated conditions, some requiring surgery"; "use[d] a wheelchair and perform[ed] self-catheterization and bowel disimpactation multiple times a day"; "court reduced jury award to an aggregate of $10.5 million, based in part on a life expectancy of 39 years." *Saladino*, 2011 WL 284476, at *7.

After reviewing these cases, the *Saladino* court explained that, "[i]n sum, a review of these New York cases leads this Court to conclude that $15 million for pain and suffering does not deviate materially from reasonable compensation." *Id.* at *8.

| Case Name | Year of Award | Injuries | Award | 2019 Dollars |
|---|---|---|---|---|
| *Tenuto v. Lederle Labs*., No. 1134/81, 2010 WL 625223 (Sup. Ct., Richmond Cty., Feb. 17, 2010) (Table) | 2010 | permanent paraplegic; physical condition will degenerate greatly; award 30 years after injury; life expectancy 20 years | **$12 million** (past pain and suffering); **$5 million** (future pain and suffering) | **$14,069,248.27 (past)** **$5,862,186.78 (future)** **Cumulative rate of Inflation: 17.2%** **Total award: $19,931,435.05** |
| *Bissell v. Town of Amherst*, 56 A.D.3d 1144 (4th Dep't 2008) | 2008 | paralysis, incontinence of bladder and bowel, able to perform some hygienic care for self; award 5.25 years after injury; life expectancy 32.7 years | **$3 million** (past pain and suffering); **$7 million** (future pain and suffering) | **$3,562,286.64 (past)** **$8,312,002.16 (future)** **Cumulative rate of Inflation: 18.7%** **Total award: $11,874,288.80** |
| *Okraynets v. Met. Transp. Auth*, 555 F. Supp. 2d 420 (S.D.N.Y. 2008) | 2008 | paraplegia, condition, if progressed, could lead to quadriplegia; award 2 years after injury; 39 years life expectancy | **$2.5 million** (past pain and suffering); **$8 million** (future pain and suffering) | **$2,968,572.20 (past)** **$9,499,431.03 (future)** **Cumulative rate of Inflation: 18.7%** **Total award: $12,468,003.23** |

| Case Name | Year of Award | Injuries | Award | 2019 Dollars |
|---|---|---|---|---|
| *Miraglia v. H & L Holding Corp.*, 5 Misc. 3d 1021(A), 799 N.Y.S.2d 162 (Sup. Ct., Bronx Cty., 2004) | 2007 | paraplegia; life expectancy 35 years | **$5 million** (past pain and suffering); **$5 million** (future pain and suffering) | **$6,165,104.03 (past)** **$6,165,104.03 (future)** **Cumulative rate of Inflation: 23.3%** **Total award: $12,330,208.06** |
| *Ruby v. Budge Rent-A-Car Corp.*, 23 A.D.3d 257 (1st Dep't 2005) | 2005 | paraplegia, associated complications, constant and severe pain; life expectancy 44.6 years | **$2 million** (past pain and suffering); **$8 million** (future pain and suffering) | **$2,618,095.24 (past)** **$10,472,380.95 (future)** **Cumulative rate of Inflation: 30.9%** **Total award: $13,090,476.19** |

Based on its review of all of these cases, particularly the injuries of the plaintiffs, the Court finds that, given the severity of Plaintiff's injuries, an award of $7,500,00.00 for past pain and suffering and $10,500,000.00 for future pain and suffering is an award that "does not deviate materially from reasonable compensation." *Saladino*, 2011 WL 284476, at *8.

### III. CONCLUSION

Having reviewed the entire file and in accordance with the Second Circuit's August 15, 2019 mandate, *see* Dkt. No. 182, the Court hereby

**ORDERS** that the total award of damages due to Plaintiff is **$22,372,011.09**, calculated as

follows:

|  |  |
|---|---|
| Baseline starting point (Dr. Reagles' Scenario #2) | $4,156,537.00 |
| Future medical care (that the court subtracted out in its original decision) | $1,176,191.33 |
| "Generic medical services" (that the Court subtracted out in its original decision) | $   13,772.76 |
| Minus: § 1151 benefits at $7,131/month that Plaintiff has received to August 2016) ($667,857) August 2016 to February 2019 (43 mos.) ($306,633) | $ (974,490.00) |
| Past pain and suffering | $ 7,500,000.00 |
| Future pain and suffering | $10,500,000.00 |
| **Total** | **$22,372,011.09** |

and the Court further

**ORDERS** that Plaintiff is entitled to post-judgment interest on the entire award at the appropriate federal rate pursuant to 28 U.S.C. § 1961; and the Court further

**ORDERS** that the Clerk of the Court shall amend the judgment in this case to reflect the total amount of damages due to Plaintiff consistent with this Memorandum-Decision and Order.

**IT IS SO ORDERED.**

Dated: February 6, 2020
     Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge